UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

EULA COLLINS BAILEY,

                Plaintiff,

v.

DEPARTMENT OF CORRECTIONAL
SERVICES OF THE STATE OF NEW YORK and
JOHN REDFERN,

                Defendants.

**REPORT AND RECOMMENDATION**

00-CV-0967A (M)

---

This case was referred to me by Hon. Richard J. Arcara, to hear and report in accordance with 28 U.S.C. §§636(b)(1)(A), (B) and (C). (Dkt. #63). Before me is defendants' motion for summary judgment seeking dismissal of plaintiff's remaining claims (Dkt. #54). For the following reasons, I recommend that defendants' motion be GRANTED.

## BACKGROUND

**A.    Procedural History**

Plaintiff Eula Collins Bailey commenced this action on November 16, 2000, alleging violations of 42 U.S.C. §1981 and Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. §§2000e-2, *et seq.*, and various state law causes of action. (Dkt. #1). Defendants were granted partial summary judgment dismissing certain of plaintiff's claims in 2001 (Dkt. ## 11, 18, 19). Defendants now move for summary judgment dismissing plaintiff's remaining claims, namely her Title VII "hostile work environment" claim against defendant New York

State Department of Correctional Services ("DOCS"), and her 42 U.S.C. §1981 claim against defendant Redfern in his individual capacity (Dkt. #54).

**B.    Factual Background**

Plaintiff, an African American Woman, is a former DOCS employee. Plaintiff began her employment with DOCS in 1985 at the Orleans Correctional Facility as a vocational instructor. (Dkt. #1 (Complaint), ¶35; Dkt. #56, Ex. B (EEOC complaint).[1] In July or August of 1993 plaintiff was assigned to the Attica Correctional Facility, as the supervisor of volunteer tutors. (Dkt. #1, ¶13; Dkt. #56, Ex. B; Dkt. #62, Ex. A (Excerpts from plaintiff's deposition transcript, p. 23)). For some time, plaintiff was the only African American employed in the Attica's Education Department. (Dkt. #61-1, Ex. A (Excerpt's from Jerald Goncalves' deposition transcript, p. 25)).

Plaintiff alleges that from 1993 until on or about August 13, 1999, her secretary, Margaret Lata, created a hostile work environment by "repeatedly and continuously obstruct[ing] and sabotag[ing] plaintiff's efforts to perform her job responsibilities . . . ." (Dkt. #1, ¶15). Plaintiff testified that Ms. Lata made numerous errors in the work which she performed for plaintiff, including omitting information from gate clearances requested by plaintiff for guest speakers (Dkt. #61-1, Ex. C. (Excerpts from plaintiff's deposition transcript), pp. 32-36) and failing to accurately type plaintiff's documents. (Id. at pp. 42-51). Other examples of Ms. Lata's

---

[1]    Plaintiff's employment with DOCS has not been continuous. Plaintiff was terminated from her position with the Orleans Correctional Facility in 1988, and then as part of a negotiated settlement arising from an EEOC complaint alleging racial discrimination, plaintiff was reinstated as a vocational instructor at Groveland Correctional Institute. (Dkt. #1, ¶¶36-38; Dkt. #56, Ex. B).

errors included transposing inmates' social security numbers, making mistakes on standardized forms which she routinely prepared, and changing words or sentence structure in plaintiff's monthly reports for her supervisor. (Id.). Additionally, Ms. Lata would give plaintiff's documents to inmates to type, a practice she did not employ with her other assignments. (Id. at p. 38).

In addition to plaintiff's problems with Ms. Lata's work product, plaintiff testified that on two occasions, several days apart, plaintiff was locked in the stairwell by a corrections officer. Plaintiff believed that Ms. Lata was responsible for these incidents because Ms. Lata had spoken with the officer, but plaintiff was uncertain of what was said. (Dkt. #61-1, Ex. C, pp. 71-77).[2]

Along with the conduct which plaintiff directly observed, plaintiff alleges that "sometime after September, 1998 plaintiff was told by teacher Marge Stankowiecz that Ms. Lata had referred to her as a 'nigger' a 'bitch' and/or 'nigger bitch' at various times in conversation with Ms. Stankowiecz and other staff. . . ." (Dkt. #61-1, Ex. B (plaintiff's interrog. resp.), p.14; Dkt. #56, Ex. A, p. 58). DOCS' retired affirmative action officer, Jerald Goncalves, testified that Ms. Stankowiecz told him the same thing, although he did not believe her (Dkt. #61-1, Ex. A, pp. 84, 90-91). Plaintiff also testified that she had a conversation with "Henry O" in which he confirmed hearing Ms. Lata call plaintiff a "nigger." (Dkt. #61-1, Ex. C, pp. 55-56).

---

[2] Although this and several other incidents described by plaintiff during discovery were not alleged in her complaint, defendants have not argued that they should be disregarded as being outside the scope of the pleadings. Therefore, I will consider them for purposes of this motion. See Cruz v. Coach Stores, Inc., 202 F. 3d 560, 569 (2d Cir. 2000) ("a district court may consider claims outside those raised in the pleadings so long as doing so does not cause prejudice"); see also 3 Moore's Federal Practice (3d Ed. 2007), §15.18[1] ("[s]ome courts have also found implied consent [under Fed. R. Civ. P. 15(b)] in the summary judgment context").

Plaintiff also testified that on "more than three occasions" she was unable to use one of the two lavatories on the second floor because Ms. Lata and plaintiff's supervisor, defendant John Redfern, would occupy them when they observed her in the vicinity. (Dkt. #61-1, Ex. C, pp. 78-79). Furthermore, plaintiff testified that on several occasions, Mr. Redfern vacuumed and cleaned the couch in the teacher's lounge after plaintiff had sat on the couch. (Dkt. #61-1, Ex. C, pp. 79-92, 84), and that on two occasions he failed to appropriately deal with inmates whom she considered to be dangerous (Id. at p. 103).

Plaintiff also claims that on one occasion an unidentified individual contaminated her lunch with a substance that looked like spit ("I wouldn't say they spit on my lunch, but that's what it looked like"), and that on three or four occasions her lunch was also removed from the refrigerator and microwaved until it was inedible. (Dkt. #61-1, Ex. C, pp. 84-85). After this occurred in 1994 or 1995, plaintiff no longer used the refrigerator. (Id.).

On July 28, 1999, plaintiff submitted a formal complaint to the DOCS Office of Diversity Management, including Mr. Goncalves. (Dkt. #61-1, Ex. B, unnumbered attachment). Plaintiff testified that on August 13, 1999, defendant Redfern entered her office and "said that he had got a call from Jerry [Goncalves] and he was quite upset, because he had been doing everything he could to help me, that he didn't appreciate me writing him up . . . . [and] he made a comment, Jerry Goncalves told me not to talk to you in the first place, and something about me being a stupid nigger and he turned and walked out of my room" (Dkt. #61-1, Ex. C, p. 113).[3]

---

[3] Whereas plaintiff's deposition testimony is equivocal as to the origin of the "stupid nigger" comment, the complaint specifically attributes it to Goncalves, quoting Redfern as stating that he was "told by Jerry Goncalves not to discuss this with a stupid nigger" (Dkt. #1, ¶22).

On August 14, 1999, plaintiff was placed on sick leave from Attica due to injuries she sustained in a prior motor vehicle accident. (Dkt. #56, Ex. A, pp. 114, 161-64). While plaintiff was on sick leave she was hired by the Collins Correctional Facility, from which she eventually retired without returning to Attica. (Id. at pp. 164-165).

On November 13, 1999, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission[4] ("EEOC"), wherein she alleged that she "was subjected to racially derogatory comments from a co-employee and different terms and conditions of employment based on race." (Dkt. #56, Ex. B). On August 17, 2000, the EEOC issued a right to sue letter. (Dkt. #56, Ex. C). Plaintiff commenced this action by Complaint filed November 16, 2000. (Dkt. #1).

## DISCUSSION AND ANALYSIS

### 1. Summary Judgment Standard

The standard to be applied on a motion for summary judgment in this Circuit is well settled. " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the

---

[4] Although plaintiff's EEOC Charge of Discrimination alleged that the discrimination occurred from April 14, 1990 (Dkt. #56, Ex. B), plaintiff's Complaint alleges discrimination only while plaintiff was employed at Attica commencing in 1993. (Dkt. #1, ¶¶13-14).

non-movant. Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' " Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003) (quoting Marvel Characters v. Simon, 310 F. 3d 280, 285-86 (2d Cir. 2002)).

The general principles underlying summary judgment apply equally to discrimination claims. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F. 3d 456, 466 (2d Cir. 2001), cert. denied, 534 U.S. 993 (2001) ("It is now beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases"). Plaintiff acknowledges that in considering a motion for summary judgment in this context, the court must "carefully distinguish between evidence that allows for a reasonable inference of discrimination and evidence that gives rise to mere speculation and conjecture" (Dkt. # 61-5, p. 4 (quoting Bickerstaff v. Vassar College, 196 F. 3d 435, 448 (2d Cir. 1999), cert. denied, 530 U.S. 1242 (2000) (in which summary judgment was granted to the defendant)).

2.  **Plaintiff's Claim Against DOCS for "Hostile Work Environment" (Title VII)**

In order to prevail on a claim of racially hostile work environment, plaintiff must prove "(1) that the workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [her] work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." Mack v. Otis Elevator Co., 326 F. 3d 116, 122 (2d Cir. 2003), cert. denied, 540 U.S. 1016 (2003) (internal quotation marks omitted). "The sufficiency of a hostile work environment claim is subject to both subjective and objective measurement: the plaintiff must demonstrate

that she personally considered the environment hostile, and that the environment rose to some objective level of hostility." Leibovitz v. New York City Transit Authority, 252 F. 3d 179, 188 (2d Cir. 2001).

The existence of a hostile work environment must "be decided based on the totality of the circumstances, in light of such factors as the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " Patterson v. County of Oneida, New York, 375 F. 3d 206, 227 (2d Cir. 2004) (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993)). Plaintiff must prove "either that a single incident was extraordinarily severe, or that a series of incidents was sufficiently continuous and concerted to have altered the conditions of her working environment." Cruz, supra, 202 F. 3d at 570.[5] "[I]solated acts or occasional episodes will not merit relief". Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F. 2d 59, 62 (2d Cir. 1992); Cruz, supra, 202 F. 3d at 570.

Plaintiff relies heavily upon the acts and omissions of her secretary, Margaret Lata, in establishing her claim. While admitting that these acts "are on their face racially neutral" (Dkt. # 61-1, ¶21), she argues that their discriminatory nature "become[s] less than conjectural if Lata did indeed tell co-workers within the department that plaintiff was ' . . . the N word and . . . stupid" (Id.). Facially neutral acts may be considered as evidence of a hostile work environment only if there is "some circumstantial or other basis for inferring that [the] incidents . . . neutral on their face were in fact discriminatory", such as derogatory comments made by the person who

---

[5] Sexual assault is an example of a sufficiently severe single incident. See Richardson v. New York State Department of Correctional Service, 180 F. 3d 426, 437 (2d Cir. 1999). However, none of the incidents alleged by plaintiff rise to this level of severity.

committed the acts. Alfano v. Costello, 294 F. 3d 365, 378 (2d Cir. 2002). However, plaintiff offers no *admissible* evidence that these comments were in fact made by Ms. Lata. Plaintiff's testimony that certain other co-workers told her that Lata had made these statements is hearsay, as is Mr. Goncalves' testimony that Marge Stankiewicz told him that she had heard Lata make the statements.[6]

In deciding this motion, I may not consider hearsay. See Cooper v. John D. Brush & Co., 242 F. Supp. 2d 261, 270 (W.D.N.Y. 2003) (Larimer, J.) ("Here, plaintiff has not provided an affidavit from the co-worker who allegedly heard this statement"); Whidbee v. Garzarelli Food Specialties, Inc., 223 F. 3d 62, 71 (2d Cir. 2000). Absent admissible evidence that Ms. Lata made such statements, plaintiff admits that it would be "conjectural" to conclude that Ms. Lata's actions were racially motivated, and conjecture is not sufficient to defeat a motion for summary judgment. Bickerstaff, supra.

With regard to the stairwell incident, plaintiff argues that "for a *presumably* white male guard to lock a black woman in a prison stairwell not once but twice" is evidence of discrimination (Dkt. # 61-5, p. 6 (emphasis added)). Because plaintiff identified the guard as "the school officer" and testified that she spoke with him concerning the incident (Dkt. # 61-1, Ex. C, pp. 71-72, 77), she obviously knows his race. Therefore, there is no basis for me to "presume" that the guard was white, when plaintiff has failed to provide concrete evidence of that fact. "The nonmoving party must set forth specific facts . . . . [s]peculative and conclusory allegations are insufficient." Good v. Presbyterian Hospital in the City of New York, 934 F. Supp. 107, 110

---

[6] Since Goncalves was retired by the time he testified at his deposition, he was not acting as an agent of DOCS, and his testimony cannot be deemed an admission under Fed. R. Evid. 801(d)(2).

(S.D.N.Y. 1996). In any event, plaintiff testified that the guard "said he didn't mean to lock me in the staircase, that he didn't know I was there" (Id., p. 77), and that he "told me I had a key, I should have opened it with a key" (Id., p. 72), which she admitted she possessed (Id.).

Nor does defendant Redfern's alleged use of a racial epithet in referring to plaintiff, although despicable if it occurred (and for purposes of this motion I assume that it did)[7] suffice to defeat the motion. In Hill v. Rayboy-Brauestein, 467 F. Supp. 2d 336 (S.D.N.Y. 2006), the court held that the fact that plaintiff's supervisors referred to her as a "nigger" and "retard" did not create a factual issue as to the existence of a hostile work environment. "[I]nfrequent comments . . . do not satisfy the objective proof requirement of a hostile work environment claim . . . . 'instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments.' " Id. at p. 360 (citing Schwapp v. Town of Avon, 118 F. 3d 106, 110 (2d Cir. 1997)).[8]

For the same reason, the other incidents upon which plaintiff relies, even if considered in their totality, are not "sufficiently continuous and concerted to have altered the conditions of her working environment", Cruz, supra, 202 F. 3d at 570, particularly over the span of plaintiff's employment at Attica from 1993 - 1999. "[I]solated events over an extended period of time have little intrinsic probative value." Patterson, supra, 375 F. 3d at 222. Plaintiff's

---

[7] " 'Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment' than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.' " Cruz, supra, 202 F. 3d at 571 (internal quotations omitted).

[8] While plaintiff argues that Redfern's use of the "n" word is also attributable to Goncalves, plaintiff's statement that Redfern told her that Goncalves used the word is inadmissible hearsay. However, even I were to assume that Redfern and Goncalves both used the word, this would still fall far short of the "steady barrage of opprobrious racial comments" required to sustain a hostile work environment claim.

reliance upon Mr. Goncalves' testimony that "I doubt that anybody . . . working in the department, would not be exposed to discrimination" (Dkt. #61-5, p. 5) is misplaced: the question before me is not whether plaintiff was the victim of discrimination,[9] but whether that discrimination was sufficiently pervasive and continuous to constitute a hostile work environment. Similarly, Goncalves' testimony concerning activities at *other* DOCS facilities[10] is irrelevant to the consideration of *plaintiff's* work environment at Attica. "The only way to characterize [plaintiff's] environment as hostile or abusive is by expanding the concept of environment to include venues in which she did not work. Such a characterization would open the door to limitless employer liability." Leibovitz, supra, 252 F. 3d at 189.

Considering the evidence in its totality, and giving plaintiff the benefit of every reasonable inference, I must nevertheless conclude that "a reasonable jury could not find in plaintiff's favor. The incidents alleged by plaintiff are insufficient in their severity or pervasiveness to constitute a racially hostile work environment". Cooper, supra, 242 F. Supp. 2d at 269.

---

[9] If that were the question, Redfern's use of the "n" word alone would suffice. "The use of a racist epithet is certainly evidence of discrimination." Hill, supra, 467 F. Supp. 2d at 360.

[10] See Dkt. #61-5, p. 4. Goncalves testified that certain corrections officers at Auburn and Elmira contributed to the campaign of KKK candidate David Duke (Dkt. #61-1, Ex. A, pp. 29-30), but stated "I don't recall looking at what happened down at Attica" (Id., p. 29). He also testified that he "would walk into facilities and . . . see an officer at the gate with a KKK buckle on their belt" (Id., p. 27), but did not identify Attica as one of those facilities.

3.  **Plaintiff's Claim Against Defendant Redfern (42 U.S.C. §1981)**

"[A]lthough . . . Title VII claims are not cognizable against individuals, individuals may be held liable under §[ ] 1981 . . . for certain types of discriminatory acts, including those giving rise to a hostile work environment". Patterson, supra, 375 F. 3d at 226. Plaintiff concedes that her §1981 claim, like her Title VII claim, is based upon "the existence of a racially hostile work environment" (Dkt. # 61-5, p. 2).

"[M]ost of the standards applicable to the conduct alleged to constitute hostile work environment in violation of Title VII are also applicable to . . . claims under §1981". Patterson, supra. 375 F. 3d at 225. Therefore, for the same reasons that plaintiff's claim for hostile work environment under Title VII claim should be dismissed, her claim for hostile work environment under §1981 should likewise be dismissed.

## CONCLUSION

For these reasons, I recommend that defendants' motion for summary judgment (Dkt. #54) be GRANTED.  Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report and Recommendation), may result in the District Judge's refusal to consider the objection.

DATED:   August 22, 2007

_____
JEREMIAH J. MCCARTHY
United States Magistrate Judge